UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────

CHESTER WOOD,

                Petitioner,

         V.

THOMAS POOLE,
Superintendent of Five Points
Correctional Facility,

               Respondent.

─────────────────────────────────────────

**REPORT AND
RECOMMENDATION**

03-CV-853

## I. INTRODUCTION

Petitioner Chester Wood, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254.  Petitioner is an inmate at the Five Points Correctional Facility.  In 2000, he was convicted in a New York State court of Murder in the Second Degree, Manslaughter in the Second Degree, Assault in the First Degree, and Criminal Possession of a Weapon in the Fourth Degree and was sentenced to a term of imprisonment.  Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 11).

## II. BACKGROUND

**A.    Facts**

The following factual summary is derived from the state court records.  In the late evening hours of June 26th and early morning hours of June 27, 1999, Petitioner shot and wounded his wife, Leslie Wood ("Leslie"), and then shot and killed his neighbor, Deborah Plunkett ("Plunkett").  Petitioner and Leslie lived at 224 Hier Avenue in Syracuse, New York.  (T at 593-596).[1]  The house was divided into two apartments.  Petitioner and Leslie were landlords to their friends, Darryl Parker and Deborah Plunkett.  (T at 596-603).

On June 26, 1999, Petitioner and Leslie attended a wedding reception at the Liverpool Country Club.  (T at 595).  While at the reception, they had an argument.  (T at 599).  When they arrived home, a new argument over Petitioner's drinking began.  (T at 600).  Petitioner left the house to go out and drink. Leslie took her son and told Plunkett she was going to her mother's house and not to tell Petitioner where they went.  (T at 600-02).

When Petitioner arrived home, he asked Plunkett where his wife was.  Plunkett told him that she did not know where they were.  (T at 773-74).  Thereafter, Petitioner discovered his wife's whereabouts and Leslie returned home, where the argument continued to escalate.  (T at 606-10).  Petitioner then took out his shotgun, and threatened to kill himself.  (T at 610).  Leslie told him he was being "stupid." She went into the kitchen and picked up the phone.  As she was picking up the phone, Petitioner shot her in the back of the neck.  (T at 610-12).  Petitioner then called his sister and told her that he had shot

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trial.

his wife and that he was going to shoot himself and Plunkett for lying to him.  (T at 613-14, 651).  Petitioner's sister called the police.  (T at 651-52, 616).  Thereafter, Petitioner went to Plunkett's apartment and shot and killed her.  (T at 759-60).  After shooting Plunkett, he told her he was sorry, and then left.  Petitioner later returned to the scene of the crime and surrendered to the police.  (T at 670-75, 695).

On September 9, 1999, an Onondaga County Grand Jury issued Indictment No. 99-0862-1, which charged Petitioner with one count of Murder in the Second Degree, one count of Attempted Murder in the Second Degree, one count of Assault in the First Degree; and one count of Criminal Possession of a Weapon in the Fourth Degree.

Thereafter, on January 20, 2000, the Grand Jury returned a superseding eight count indictment, Indictment No. 2000-0075-1, charging Petitioner with two counts of Murder in the First Degree, in violation of New York Penal Law ("NYPL") §127.27(1)(vii);[2] Attempted Burglary in the First Degree, in violation of NYPL §110.00, as defined in §140.30(1); two counts of Murder in the Second Degree, in violation of NYPL § 125.25(1); 125.25(3); Attempted Murder in the Second Degree, in violation of NYPL § 110.00, as defined in § 125.25(1); Assault in the First Degree, in violation of NYPL § 120.10(1); and Criminal Possession of a Weapon in the Fourth Degree, in violation of NYPL §265.01(2).

**B.     State Trial Court Proceedings**

The Honorable John J. Brunetti, Onondaga County Court Judge, presided over Petitioner's trial proceedings.  Petitioner's trial began on May 1, 2000. Petitioner was

---

[2]Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

represented at trial by Edward W. Klein, Esq.  Petitioner did not dispute that he shot his wife and neighbor, but he attempted to prove that his actions were the result of an impaired mental state caused by alcohol and cocaine.  (T at 1066).  On May 5, 2000, the jury found Petitioner guilty of Murder in the Second Degree (felony murder) and Manslaughter in the Second Degree for Plunkett's death,  Assault in the First Degree for shooting Leslie, and Criminal Possession of a Weapon in the Fourth Degree. (T at 1466-68).  Petitioner was acquitted of First Degree Murder and Second Degree Murder (intentional murder) with regard to the shooting of Plunkett and was acquitted of Attempted Murder in the Second Degree in connection with the shooting of his wife.  (T at 1466-67).[3]

On July 12, 2000, Petitioner was sentenced by Judge Brunetti to an indeterminate term of twenty-five years to life imprisonment for his conviction of Murder in the Second Degree, an indeterminate term of five to fifteen years for his conviction of Manslaughter in the Second Degree (to run concurrent to his sentence for Murder in the Second Degree), a determinate sentence of fifteen years for his conviction of Assault in the First Degree (to run consecutive to the Murder and Manslaughter convictions), and an unconditional discharge for his conviction of Criminal Possession of a Weapon in the Fourth Degree.  (S at 25-26).[4]   Therefore, Petitioner's total aggregate sentence was forty years to life imprisonment.

---

[3]It is noted that no verdict, either of acquittal or guilt, was ever stated for the count of Attempted Burglary in the First Degree.  See (T at 1467) and (Appendix II at A218).  "A218" is a page in a copy of the verdict sheet.

[4]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

**C.      State Appellate Proceedings**

Petitioner, represented by Philip Rothschild, Esq., appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court.  Petitioner raised three arguments in support of his appeal: (1) that the trial court erred in summarily denying his motion to dismiss the indictment for defective grand jury proceedings; (2) that the felony murder conviction should be reversed for insufficient proof that the shooting was done in furtherance of an alleged attempted burglary or that it was in immediate flight from the initial assault; and (3) that the sentences imposed by the trial judge were harsh and severe.

In a decision issued on February 1, 2002, the Appellate Division affirmed Petitioner's conviction and sentence.   People v. Wood, 737 N.Y.S.2d 760 (4th Dep't 2002).   The appeals court rejected Petitioner's argument that the grand jury proceedings were impaired, finding that he had failed to establish "the existence of defects impairing the integrity of the Grand Jury proceeding and giving rise to a possibility of prejudice."  Id.  Additionally, the appeals court found that Petitioner failed to preserve for their review his argument "that the evidence is legally insufficient to support the conviction of felony murder."  The appeals court found that in any event, that claim was without merit.  Id.  Lastly, the appeals court found that the sentences were neither harsh nor severe. Id.

Petitioner's application for leave to appeal to the Court of Appeals was denied on May 20, 2002.   People v. Wood, 98 N.Y.2d 657 (2002).

**D.   Federal Habeas Corpus Proceedings**

Petitioner, proceeding *pro se*, commenced this action on July 9, 2003, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1). Petitioner asserts two grounds for habeas relief: (1) that the trial court erred in denying his motion to dismiss his indictment for defective grand jury proceedings and (2) that there was insufficient evidence to support his felony murder conviction. See (Docket No. 1 at 5). Thereafter, Respondent filed submissions in opposition.  (Docket Nos. 7 & 8).  Respondent argues that Petitioner's grand jury claim is not cognizable on habeas corpus review and that his felony murder claim was procedurally defaulted and, in any event, meritless.  See (Docket No. 8).

For the reasons that follow, the Court recommends that the Petition be DENIED.

## III. DISCUSSION

### A.    Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim."  Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to

6

constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Id.

A state court decision involves "an unreasonable application of" Supreme Court case

law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).


**B.    Petitioner's Claims**

As set forth above, Petitioner asserts two grounds for habeas relief: (1) that the trial court erred in denying his motion to dismiss his indictment for defective grand jury proceedings; and (2) that there was insufficient evidence to support his felony murder conviction.   See (Docket No. 1 at 5).


**1.    Grand Jury Proceedings**

Petitioner's first claim for habeas relief is that the trial court erred in denying his motion to dismiss the indictment without even reviewing the grand jury minutes for possible defects.  Respondent argues that this claim is not cognizable on habeas corpus review. See (Docket No. 8 at 6-8).

It is well settled that alleged errors in grand jury proceedings are not cognizable on federal habeas corpus review  because Petitioner was convicted by a jury after a trial. A verdict of guilty necessarily renders any irregularities before the grand jury harmless as it establishes not only that there existed probable cause to indict the defendant, but also that the defendant was "in fact guilty as charged beyond a reasonable doubt."  United States v. Mechanik, 475 U.S. 66, 68 (1986); Lopez v. Riley, 865 F.2d 30, 32 (2d Cir.1989) (holding that habeas petitioner's "claims of impropriety before the grand jury. . . [were]. . . cured in the trial before the petit jury, which convicted').

In the present case, any arguable defect in the grand jury proceedings was cured by the petit jury's verdict of guilty on four of the counts of the superceding indictment. Accordingly, this Court finds that Petitioner's first claim is not cognizable on habeas review and should be DENIED.

## 2.    Sufficiency of the Evidence

Petitioner's second ground for habeas relief is that the evidence at trial was insufficient to support his conviction for Murder in the Second Degree (felony murder). Specifically, Petitioner argues that there was no proof offered at trial that he killed Plunkett while in the course of "immediate flight" from the initial assault and shooting of his wife. Additionally, Petitioner argues that there was no proof that the shooting of Plunkett was done in furtherance of an attempted burglary.  Respondent argues that Petitioner "has procedurally defaulted on this claim by failing to preserve it for state court review" because he failed to raise it before the trial court and that in any event the "claim is meritless." (Docket No. 8 at 8).

### a.    Procedural Default

Where the highest state court that rendered a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar," such procedural default constitutes independent and adequate state grounds to deny habeas relief.  Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (internal quotations and citations omitted); see also Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir.1996); Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir.1995).

In such cases, a federal court is generally barred from reviewing the petitioner's claims.  A federal habeas court may review a petitioner's claims only if the petitioner demonstrates (1) cause for the default and resulting prejudice, or (2) that the failure to consider the claims will "result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); see also Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

As to the first test, "cause" is defined as "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).  To demonstrate prejudice, the petitioner must show more than the errors "created a possibility of prejudice, but [instead] that they worked to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).  Where a petitioner is unable to show cause, the Court need not consider actual prejudice. See McCleskey, 499 U.S. at 502, 111 S.Ct. 1454.

The Appellate Division held that Petitioner failed to preserve for its review his claim

10

that the evidence is legally insufficient to support his felony murder conviction.  Wood, 737 N.Y.S.2d 760.  The Appellate Division's statement that Petitioner "failed to preserve" his claim is sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue.  See Harris v. Reed, 489 U.S. 255, 265 n.12, 109 S.Ct. 1038 (1989).  Thus, this ruling constituted an "independent" state law ground for the decision.

As noted above, a petitioner may obtain habeas review of an otherwise procedurally defaulted claim only if he can show "cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Id., 489 U.S. at 262, 109 S.Ct. 1038 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). In order to show a "fundamental miscarriage of justice," Harris, 489 U.S. at 262, 109 S.Ct. 1038, a petitioner must demonstrate "actual innocence."  Calderon v. Thompson, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); accord Washington v. James, 996 F.2d 1442, 1447 (2d Cir.1993), cert. denied, 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994).

Petitioner has not alleged any facts that would constitute cause for default.  Bousley v. United States, 523 U.S. 614, 630, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting United States v. Frady, 456 U.S. 152, 167-168, 102 S.Ct. 1584, 1594-1595, 71 L.Ed.2d 816 (1982)).  Additionally, Petitioner has not come forward with any "new evidence" to support a claim that he is "actually innocent" of the charges on which he was convicted. See Schlup v. Delo, 513 U.S. at 327, 115 S.Ct. 851. Accordingly, the procedural default bars federal review of Petitioner's claim challenging the sufficiency of the evidence to support his

conviction of felony murder and should be dismissed.

**b.     Evidence Regarding Predicate Felony**

In addition, even if this Court were to excuse the procedural default and consider Petitioner's claim on the merits, his claim would still fail for the following reasons.

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted).  A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

In making this assessment, the reviewing court may neither "disturb the jury's findings with respect to the witnesses' credibility," United States v. Roman, 870 F.2d 65, 71 (2d Cir.1989), nor make its own "assessments of the weight of the evidence[.]"

<u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir.1996).  Thus, under this standard, a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" <u>Wheel v. Robinson</u>, 34 F.3d 60, 66 (2d Cir.1994) (quoting <u>Jackson</u>, 443 U.S. at 326, 99 S.Ct. 2781).

In the present case, the Appellate Division concluded that, in addition to the procedural default, Petitioner's claim regarding the sufficiency of the evidence was "without merit."  <u>Wood</u>, 737 N.Y.S.2d at 761.  Specifically, the court held that the evidence "viewed in the light most favorable to the People, could lead a rational trier of fact to conclude that the elements of the crime had been proven beyond a reasonable doubt."  After careful consideration of the record, this Court finds that the Appellate Division's decision in this regard was neither contrary to clearly established federal law nor based upon an unreasonable determination of the facts in light of the evidence presented at trial.

To establish felony murder in the Second Degree in New York, the prosecution must establish (1) that the defendant committed or attempted to commit one or more of the designated predicate felonies, (*e.g.*, burglary), and (2) "in the course of and in furtherance of such crime or of immediate flight therefrom," he or she caused the death of a person. N.Y. Penal Law § 125.25 (3).  Any degree of burglary can serve as the predicate felony for a felony murder conviction.  <u>See</u> <u>People v. Adinolfi</u>, 672 N.Y.S.2d 432 (2d Dep't 1998). A person is guilty of burglary in the third degree "when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." N.Y. Penal Law § 140.20.

The trial testimony indicated that after shooting his wife, Petitioner told his sister that he intended to kill Plunkett.  (R at 614-15).  Petitioner then left his apartment carrying his

13

shotgun and went to Plunkett's apartment. (R at 759).  Petitioner then attempted to force his way into Plunkett's apartment.  He was unable to open the door because Plunkett was blocking the way with her body.  After trying unsuccessfully to gain entry into the apartment, Petitioner fired the shotgun into a window in the door, killing Plunkett.  (R at 759-61).

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the prosecution at Petitioner's trial established all of the elements of felony murder under New York law.  To wit, the jury could reasonably have concluded that Petitioner caused Plunkett's death during the course of and in furtherance of attempted burglary.  There was ample evidence that Petitioner killed Plunkett during the course of his attempt to unlawfully enter her apartment with the intent to assault or kill her therein.  See People v. Rose, 626 N.Y.S.2d 883, 884-85 (3d Dep't 1995) (finding evidence sufficient to support felony murder conviction where testimony indicated "that defendant went to [victim's] apartment with a gun, gained entrance for the purpose of shooting him, and in fact did shoot him and cause his death"); see also People v. Spencer, 622 N.Y.S.2d 580, 581 (2d Dep't 1995); People v. Urena, 584 N.Y.S.2d 58, 58 (1st Dep't 1992).[5]

Accordingly, even if this Court were to excuse the procedural default and consider this claim on the merits, Petitioner would not be entitled to relief.  As such, this Court recommends that Petitioner's second claim be denied.

---

[5]It should be noted that although no verdict was returned for the predicate felony of Attempted Burglary in the First Degree, in a felony murder prosecution, it is not necessary that the underlying felony be charged or decided as a separate crime.  See People v. Colon, 710 N.Y.S.2d 35 (1st Dep't 2000); People v. Wroblewski, 498 N.Y.S.2d 797 (4th Dep't 1985), order aff'd, 67 N.Y.2d 933 (1986).  Moreover, as stated above, when the felony is burglary, the felony murder count may allege the felony without specifying its degree, so that proof establishing any degree of the predicate felony will be sufficient to support the felony murder conviction.  Id.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Chester Wood's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that the Petition be dismissed.  In addition, because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:      May 11, 2007

Syracuse, New York

## V. ORDERS

Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)**

of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1©.

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1©.

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May  11, 2007

Victor E. Bianchini
United States Magistrate Judge